NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ISMAIL SHABAZZ,

       Petitioner,

v.

TERRANCE MOORE, Administrator, East
Jersey State Prison; DAVID SAMSON,
Attorney General of the State of New
Jersey,

       Respondent(s).

Civ. No. 02-3141 (WGB)

O P I N I O N

Appearances

Ismail Shabazz, #PN263434
SBI816945A
Northern State Prison
P.O. Box 2300
Newark, NJ 07114

    Pro Se Petitioner

Donald C. Campolo, Esq.
Acting Essex County Prosecutor
Essex County Courts Building
Newark, NJ 07102

    Attorney for Respondent

**BASSLER, SENIOR DISTRICT JUDGE:**

Petitioner, Ismail Shabazz ("Petitioner"), a state prisoner proceeding pro se, files this petition seeking a writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  For the reasons set forth in this Opinion, Petitioner's request for habeas corpus relief is **denied.**

I.   <u>BACKGROUND</u>

At approximately 2:30 a.m. on March 15, 1992, police responded to a call from 349 South 12th Street in Newark, NJ. Emerson Cullars had been killed by a shot to the back of the head at close range.  Investigator Patrick DeFrancisci ("DeFrancisci") was the lead detective on the investigation.  When DeFrancisci arrived at the scene, he observed two identical Buicks parked next to each other.  One of these belonged to Dana Williams, who had reported her car stolen the previous night at 8:00 p.m. Anthony Brown, who was with the victim before he was killed, testified at trial that he had stolen the car from in front of a fast food restaurant at the request of the victim.

On March 20, 1992, five days after Cullars was shot, DeFrancisci visited the home of Dana Williams, because he believed that her car was connected to the homicide.  DeFrancisci looked in Ms. Williams' bedroom, where he saw Petitioner lying in bed.  DeFrancisci took note of Petitioner's physical characteristics.  After further investigation, Anthony Brown,

Antonio Feaster, and Renise Hughes, an eyewitness, all identified Petitioner as the person who shot Emerson Cullars.

Anthony Brown testified that he and the victim were "stripping" the car Brown had stolen.  As the men were in the process of stripping down the car, Brown saw two men approaching them (later identified as Petitioner Ismail Shabazz and Antonio Feaster).  As the two men approached Cullars and Brown, Brown recognized one of them and said, "What's up big man?" The other man replied, "This is what's up," pulled out a gun, and shot the victim in the head.  When Brown saw the gun, he proceeded to run away from the assailant, and was chased by Feaster.  Feaster caught up with Brown.  He then let Brown go and said that "[h]e didn't know [Petitioner] was going to [shoot the victim]." Meanwhile, the assailant observed a car with two people in it (Renise Hughes and her cousin), who had witnessed the shooting. He walked up to the driver's side door of the car, bent down, and waived his gun at the window.  Renise Hughes looked at the assailant, and, as noted, later identified him as Petitioner. Petitioner told them to drive away, and they complied.  The identity of Cullars' assailant was the central issue at Petitioner's trial.

II.  DISCUSSION

A.  Procedural History

The Essex County Grand Jury charged Petitioner Ismail

Shabazz with: (1) the purposeful or knowing murder of Emerson Cullars; (2) unlawful possession of a firearm without a carry permit; and (3) possession of a firearm with the intent to use it unlawfully against the person of another.

Petitioner's first trial ended in a mistrial.  His second trial commenced on June 28, 1994, before the Honorable Eugene J. Codey, Jr., New Jersey Superior Court Judge.  On July 8, 1994, Petitioner was convicted by a jury of aggravated manslaughter and the two weapons offenses.  On July 29, 1994, Judge Codey sentenced Petitioner to an aggregate sentence of thirty years imprisonment with a fifteen-year period of parole ineligibility.

On appeal Petitioner argued that (1) the prosecutor improperly presented testimony regarding Petitioner's and the victim's criminal records; (2) the court erroneously charged the jury as to flight; (3) the court erred in suppressing testimony from DeFrancisci regarding the details of an individual's physical description of Petitioner; (4) the trial judge erred in using prior Wade hearing rulings in a subsequent trial and counsel was ineffective in not requesting a new Wade hearing prior to trial; (5) the prosecutor was guilty of misconduct when, in his summation, he commented on the demeanor of Petitioner, although Petitioner did not testify; (6) the court failed to give a unanimity instruction; (7) the verdict was against the weight of the evidence; (8) Petitioner was denied the right to confront

4

his accuser; and (9) the trial court erred by excusing juror #
12.  The Appellate Division concluded that none of these alleged
improprieties, even if true, constituted reversible error.

On July 8, 1997, Petitioner filed a petition for
certification to the Supreme Court of New Jersey.  On September
22, 1997, the Supreme Court denied certification.  Petitioner
subsequently filed a motion for post-conviction relief and, when
that was denied, appealed from the order denying post-conviction
relief.  After the appeal was denied, Petitioner filed this
application for habeas corpus relief pursuant to 28 U.S.C. §
2254.

    B.   <u>Exhaustion of State Remedies</u>

Persons in custody pursuant to the judgment of a State court
shall not be granted habeas corpus relief by a federal court
unless it appears that "the applicant has exhausted the remedies
available in the courts of the State."  28 U.S.C. §
2254(b)(1)(A); <u>see also</u> <u>Lambert v. Blackwell</u>, 134 F.3d 506, 513
(3d Cir. 1997).  The state courts must have the first opportunity
to hear and correct an alleged Constitutional violation that
occurred in the state court system.  <u>Picard v. Connor</u>, 404 U.S.
270, 276 (1971).

To satisfy the exhaustion requirement, a petitioner must
show that the claims he asserts in federal court have been
"fairly presented" to the state courts.  <u>Id.</u> at 275.  A claim has

5

been "fairly presented" when the federal claim is the "substantial equivalent" of that presented in the state courts. Gibson v. Scheidemantel, 805 F.2d 135, 138 (3d Cir. 1986). The exhaustion requirement flows from principles of federalism and comity. Lambert, 134 F.3d at 513 n.18.

Initially, the Court observes that Petitioner's application for habeas relief contains unexhausted claims. Petitioner raises his "actual innocence" claim for the first time in this petition, violating the requirement that claims asserted in federal court first be "fairly presented" to the state courts. Picard, 404 U.S. at 275.

Furthermore, although Petitioner has previously asserted due process violations and ineffective assistance of counsel claims at the state level (Petitioner's Br. at 2, 3), Petitioner asserts different factual bases for these claims for the first time in this petition. For example, in Petitioner's previous ineffective assistance of counsel claim, he asserted that counsel prevented him from testifying at trial; he now asserts that counsel was ineffective for failing to call certain witnesses or fully cross-examine others. (Resp. Br. at 19.)

Because claims are "substantially equivalent" only when both the legal theory and the factual support have been presented to federal and state courts, O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987), and because Petitioner's factual support for his

6

previously-asserted claims is novel, Petitioner has failed to exhaust his state remedies prior to this application for federal habeas relief.

While it is true that, under the exhaustion doctrine, federal courts can only grant habeas petitions after those claims have first been totally exhausted at the state level, Lambert, 134 F.3d at 513, federal courts are not barred from *denying* habeas petitions on the merits.  Section 2254(b)(2), as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), codifies the power of federal courts to exercise their discretion and deny habeas petitions on the merits, "notwithstanding the failure of the applicant to exhaust [State remedies]."  28 U.S.C. § 2254(b)(2).  This relaxation of the strict "total exhaustion" requirement avoids useless and wasteful state court litigation where a petition is clearly without merit.  Granberry v. Greer, 481 U.S. 129 (1987); Hoxsie v. Kerby, 108 F.3d 1239, 1242-43 (10th Cir. 1997).

Because § 2254(b)(2) does not provide a standard for determining when a federal habeas court should dismiss on the merits instead of requiring total exhaustion, the Third Circuit reads the statute in conjunction with the Supreme Court's holding in Granberry.  Lambert, 134 F.3d at 514.  Under this approach, a petition should be denied when it is "perfectly clear that the applicant does not raise even a colorable federal claim."  Id. at

7

515 (quoting <u>Granberry</u>, 481 U.S. at 135).  As will be shown below, this standard has clearly been met in this case.  As such, this Court is within its bounds in reaching the merits and denying habeas relief.

     C.   <u>Standard of Review</u>

Federal courts have the power to entertain habeas corpus applications by persons in custody pursuant to the judgment of a State court and who claim that they "[are] in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

In addition, 28 U.S.C. § 2254(d), as amended by AEDPA, precludes federal habeas relief on any claim adjudicated on the merits in State court, <u>unless</u> the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the Third Circuit's interpretation in <u>Matteo v. Superintendent, SCF Albion</u>, 171 F.3d 877 (3d Cir. 1999), § 2254(d)(1) requires a two-step inquiry.  First, a federal habeas court must determine whether the state court decision was

"contrary to" a Supreme Court precedent that resolves the petitioner's claim.  Id. at 888.  A claim will be considered "contrary to" Supreme Court precedent if the state court has reached a "conclusion opposite to that reached by th[e] [Supreme] Court on a question of law, or if the state court decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts."  Marshall v. Hendricks, 307 F.3d 36, 51 (3d Cir. 2002) (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)).  To obtain relief on these grounds, the petitioner must show that Supreme Court precedent "requires the contrary outcome."  Matteo, 171 F.3d at 888 (emphasis in original); see also O'Brien v. Dubois, 145 F.3d 16 (1st Cir. 1998).  "This standard precludes granting habeas relief solely on the basis of simple disagreement with a reasonable state court interpretation of the applicable precedent."  Matteo, 171 F.3d at 888.  Only if the Supreme Court has not articulated a rule specific enough to trigger "contrary to" review can a federal habeas court proceed to the second step.  Matteo, 171 F.3d at 888.

     Under the second Matteo step, the court must determine whether the State court decision was based on an "unreasonable application of" Supreme Court precedent.  Id. at 889.  The appropriate question is whether the state court's application of Supreme Court precedent was "objectively reasonable."  Id. "[T]he 'unreasonable application' clause does not empower a

habeas court to grant the writ merely because it disagrees with the state court's decision."  Id. (quoting O'Brien, 145 F.3d at 25).

The Supreme Court maintained this deference to State courts in Williams v. Taylor, 529 U.S. 362 (2000), holding that "[S]tate court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated."  Id. at 389.

D.   Petitioner's Argument

Petitioner appears to make four independent arguments as to why he should be granted a writ of habeas corpus: (1) he is actually innocent; (2) he was denied due process; (3) he was denied the right to confront witnesses against him; and (4) he was denied the right to effective assistance of counsel.  For the reasons stated below, each of Petitioner's four claims fails.

1.   Actual Innocence Claim

Petitioner first claims that his habeas corpus petition should be granted due to his actual innocence.  In cases where a petitioner fails to follow a state procedural rule at trial, on appeal, or on state post-conviction review, and then seeks a writ of habeas corpus from a federal court, he has "procedurally defaulted".  Ira P. Robbins, Habeas Corpus Checklists § 12:1 (2005).  While federal courts generally do not entertain such

procedurally defaulted constitutional claims in habeas petitions, Hubbard v. Pinchak, 378 F. 3d 333, 338 (3d Cir. 2004), the exception to this general rule arises when a petitioner can either show "cause and prejudice" for the procedural default, or that a "miscarriage of justice" will occur absent review.  Id.; see also Cristin v. Brennan, 281 F.3d 404, 414 (3d Cir. 2002). An "actual innocence" claim (such as that which Petitioner makes here) is one "miscarriage of justice" that enables courts to hear the merits of the habeas claim.  Hubbard, 378 F.3d at 339.

It does not appear here that Petitioner has failed to follow any state procedural rules, at either the trial, appellate, or post-conviction stages.  As such, under Hubbard, this Court may not entertain the merits of an "actual innocence" claim.[1]

Even if the Court assumes for the sake of argument that Petitioner in fact brings his actual innocence claim pursuant to a procedural default, his claim still fails.  A petitioner who asserts actual innocence "must show 'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence' presented in his habeas petition," Calderon v. Thompson, 523 U.S. 538, 539 (1998) (quoting Schlub v. Delo, 513 U.S. 298 at 327), and must support his "actual innocence" claim

---

[1] To the extent that the Court can interpret Petitioner's "actual innocence" claim to be based not on an attempt to overcome a procedural default, but rather as supporting his constitutional grounds for relief, the Court addresses those grounds in Sections 2-4 below.

with new reliable evidence that was presented at trial.  Hubbard, 378 F.3d at 339.  Furthermore, "actual innocence means factual innocence, not mere legal insufficiency."  Bousley v. U.S., 523 U.S. 614, 623 (1998).

Petitioner has not presented any new reliable evidence to support his actual innocence claim--his claim rests largely on the allegation that "the entire case was coordinated by Investigator DeFrancisci."  (Petitioner's Br. at 5.)  Instead, he simply reiterates the evidence presented at trial, and claims that the State failed to meet its burden of proof.  (Petitioner's Br. at 13.)  This argument fails the Bousley requirement that an actual innocence claim assert something more than mere "legal insufficiency."  Bousley, 523 U.S. at 623.

Even if the Court credits Petitioner's statement that Darnell Johnson would have provided a different description of the shooter (Petitioner's Br. at 19), given the compelling evidence to the contrary (including, but not limited to, the identifications by Anthony Brown, Antonio Feaster, and Renise Hughes) the Court does not find it "more likely than not that no reasonable juror would have convicted [Petitioner] in the light of the new evidence."  Schlub, 513 U.S. at 327.  Furthermore, "claims of actual innocence based on [allegedly] newly discovered evidence...do not state a ground for federal habeas relief absent

12

an independent constitutional violation" in the state proceeding.[2]
Herrera v. Collins, 506 U.S. 390, 400 (1993).  For the foregoing
reasons, Petitioner's "actual innocence" claim must fail.

> 2.  Due Process Claim

Petitioner next claims that he was denied due process on the
grounds that he did not receive a fair trial.  He claims that his
conviction was "bottomed on insufficient evidence, lies and
prejudice," (Petitioner's Br. at 14), and that he was denied a
fair trial due to Investigator DeFrancisci's coordination of the
case against him, gaping holes in Renise Hughes' testimony, and
problems with Antonio Feaster's and Anthony Brown's
identification.

Section 2254(d)(2) does not allow this Court to review the
facts and evidence de novo; this Court can only grant a habeas
corpus motion if adjudication in the State court resulted in a
decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court
proceeding.  In the present case, there exists significant
evidence supporting Petitioner's guilt.  The State presented
three identifying witnesses, one of whom was with Petitioner
minutes before the shooting, and one of whom selected Petitioner
from a completely different photo array a year after the murder
(Resp. Br. at 9, 23.)  Investigator DeFrancisci, who testified as

---

[2] See note 1 above.

to the facts of his investigation, was only a "coordinator" of the case insofar as his duty as an officer of the law required him to be.

The jury's guilty verdict and the subsequent affirmation by the Appellate Division was not unreasonable in light of the overwhelming evidence against Petitioner; therefore his Due Process rights were not violated.

3.   Confrontation Clause Claim

Petitioner's third claim is that he was denied his constitutional right to confront Renise Hughes regarding any benefit her brother, Ahmad Amin Hughes ("Ahmad"), may have been receiving from the prosecutor in exchange for her testimony in this case.  Petitioner argues that the pending charges against Ahmad were relevant to Petitioner's case and to the testimony of Renise Hughes, and argues that his Sixth Amendment rights were violated because the jury was not given this information.

The right of an accused to confront the witnesses against him is a fundamental right; included in this right is the right to an effective cross-examination.  Pointer v. Texas, 380 U.S. 400, 403-404 (1965).  However, the Confrontation Clause guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (emphasis in original).

Defense counsel had ample opportunity to cross examine the witness, Renise Hughes (2T 113:1 to 145:13).[3]  He did not question Renise Hughes about her brother's pending case, because he deemed it to be "totally unrelated" (5T 4:11).[4]  Because defense counsel conducted an effective cross-examination in the presence of Petitioner, and because the strategic judgments of defense counsel are afforded "a heavy measure of deference," Virgin Islands v. Weatherwax, 77 F.3d 1425, 1432 (3d Cir. 1996), Petitioner's constitutional right to confront this witness was not violated.

4.   Ineffective Assistance of Counsel Claim

Petitioner's final argument is that his Sixth Amendment right to effective assistance of counsel was violated.  A claim of ineffective assistance of counsel requires the court to determine whether counsel was both effective and competent. Judicial scrutiny of counsel's performance must be highly deferential, and the court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.  See Strickland v. Washington, 466 U.S. 668, 689 (1984).  The threshold for determining ineffective

_____

[3] For the purposes of this Opinion, the Court has adopted the transcript citation method used in the defense brief.  See Def. Br. at p.2, footnote 1.  Thus, 2T 113:1-145:13 refers to the transcript of testimony given on March 4, 2004, at page 113, line 1, through page 145, line 13.

[4] 5T refers to transcript dated March 10, 2004.

15

assistance of counsel is "whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Id.</u> at 686.

The Court in <u>Strickland</u> advanced a two-part test for evaluating the performance of counsel.  First, the petitioner must show that, after considering all of the circumstances and evidence, counsel's performance was "ineffective," as measured against the objective standard of reasonably effective assistance.  <u>See</u> <u>id.</u> at 687.  Second, the petitioner must demonstrate that counsel's performance so "prejudiced" the defense that the petitioner was deprived of a fair trial; this requires the petitioner to show with reasonable probability that the result would have been different in the absence of counsel's errors.  <u>See</u> <u>id.</u>  A petitioner must satisfy both elements of the <u>Strickland</u> test to establish a claim of ineffective assistance.

Petitioner claims that defense counsel was ineffective because counsel (1) failed to locate Betty Sanders, the cousin of Renise Hughes, who was driving the car that Petitioner stuck his head into; (2) did not call Ahmed Hughes to testify; (3) did not forcefully cross-examine Antonio Feaster and Anthony Brown; (4) did not bring out Renise Hughes' criminal history, or ascertain if Ms. Hughes gave incriminating testimony against Petitioner in exchange for leniency toward her brother; and (5) failed to

call Darnell Johnson, whose description of the shooter differed from Renise Hughes' description.

Each of Petitioner's contentions is without merit and fails the first element of the Strickland test.  The Supreme Court has emphasized that "[i]n assessing the adequacy of counsel's performance, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  Strickland, 483 U.S. at 690.

First, defense counsel's failure to locate Betty Sanders was objectively reasonable, because "there was no evidence adduced ...that Betty Sanders looked at [P]etitioner when he stuck his head into the car." (Resp. Br. at 31.)  Secondly, defense counsel's strategic decision not to call Ahmed Hughes is presumed to have been objectively reasonable, given the fact that Petitioner has not submitted any evidence indicating what Hughes would testify about. (Resp. Br. at 28.)  Mere speculation as to an individual's potential testimony does not overcome the "substantial deference" granted to defense counsel's strategic choices.  Virgin Islands, 77 F.3d at 1432.  As to Petitioner's third ineffectiveness claim, as Respondent's Brief indicates on pages 32-36, the record is clear that counsel "forcefully" and thoroughly questioned Feaster and Brown on cross-examination regarding their criminal histories. (3T 39:2 to 40:23)[5]; (2T 64:22

---

[5] 3T refers to transcript dated March 5, 2004.

to 66:11).

Petitioner's fourth contention--that counsel was ineffective because he failed to question Renise Hughes about her brother's pending charge--is also without merit.  As previously discussed, this issue was addressed by defense counsel, who determined that Renise Hughes' brother's pending charge was "totally unrelated" and therefore felt there was no need to call him. (5T 4:11.) With regard to counsel's failure to address Renise Hughes' criminal history, there is no evidence in the record, nor does Petitioner present any evidence, that would show that she in fact had a criminal record.

Finally, Petitioner's assertion that defense counsel was ineffective because of his failure to call Darnell Johnson is without merit as well.  Petitioner mentions Johnson's name for the first time in his petition for habeas corpus relief, does not submit any evidence indicating how Johnson's description of the shooter might differ from the other accounts, fails to assert that in fact defense counsel did not attempt to locate Johnson, and ignores the fact that none of the other witnesses who testified mentioned Johnson's presence at the time of the shooting.  (Resp. Br. at 37-38.)  Given these facts, defense counsel's decision not to call Johnson was more than reasonable. Thus, Petitioner has failed to meet his burden regarding the first <u>Strickland</u> element that defense counsel did not provide

18

objectively reasonable assistance.

Even if the Court assumes for the sake of argument that defense counsel's decisions were not objectively reasonable, Petitioner's ineffective counsel claim still fails the second Strickland factor.  Petitioner cites United States v. Cronic, 466 U.S. 648 (1984), for the proposition that under certain circumstances there exists a presumption of ineffective assistance of counsel, obviating the need to show "prejudice" under the second Strickland element.  Petitioner argues that he was constructively denied counsel altogether, so such a presumption should apply here.  The Court in Cronic lists three circumstances in which a presumption of ineffective assistance of counsel may arise: (1) complete denial of counsel; (2) denial of counsel at a critical stage of the trial; and (3) failure of counsel to subject the prosecution's case to meaningful adversarial testing.  Id. at 659.  Absent any of these circumstances, a petitioner must (under the second Strickland factor) show with reasonable probability that the result would have been different in the absence of counsel's errors.  See Strickland at 687.

On the facts here, just as on the facts in Cronic, the surrounding circumstances do not demonstrate that "counsel failed to function in any meaningful sense as the Government's adversary."  Cronic, 466 U.S. at 666.  In fact, here the record

19

indicates a stronger case for effective assistance than does the record in Cronic--defense counsel here was experienced in criminal matters, had ample time to prepare for trial, and was trying a rather straightforward criminal case, not a case involving complex financial transactions.

At no point was Petitioner denied counsel, and at no point did defense counsel fail to engage in "meaningful adversarial testing." Id. at 656.  To the contrary, the record shows that defense counsel raised a vigorous defense in the face of strong evidence of Petitioner's guilt.  Petitioner's claim that he was constructively denied counsel is thus without merit.  Therefore, Petitioner has failed to qualify for any of the three "Cronic" exceptions to the second Strickland factor.  Since he has also failed to submit any evidence that the outcome was actually "prejudiced" by defense counsel's alleged errors, Petitioner has failed to meet the second Strickland requirement for ineffective assistance of counsel.

Petitioner also claims that he was denied effective assistance of counsel on appeal.  However, the record contains a detailed, persuasive appellate brief that sets forth coherent arguments that were thoroughly considered by the Superior Court of New Jersey, Appellate Division.

Based on the record, the State's compelling evidence against Petitioner, and Petitioner's failure to meet the Strickland

20

standard, the Court rejects Petitioner's claim that counsel's performance was deficient.

III. <u>CONCLUSION</u>

For the foregoing reasons, Petitioner's application seeking a writ of habeas corpus is **denied**.


/s/ WILLIAM G. BASSLER

William G. Bassler, U.S.S.D.J.


DATE:    June 22, 2005

21